UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA and STATE OF CALIFORNIA, ex rel. REBECCA HANDAL, et al.,<br><br>Plaintiffs,<br><br>v.<br><br>CENTER FOR EMPLOYMENT TRAINING, et al.,<br><br>Defendants. | No.  2:13-cv-01697-KJM-KJN<br><br>ORDER |

Qui tam plaintiffs and relators Rebecca Handal, Dina Dominguez, Elicia Fernandez, and Christine Stearns filed the original Complaint against defendants on August 16, 2013, ECF No. 1, and amended the complaint on March 26, 2014, FAC, ECF No. 7.  The First Amended Complaint alleges defendants Center for Employment Training (CET), and Mohammad Aryanpour, Jennifer Cruickshank, Tomasita Guajardo, Ezequiel Guzman, Shirley Johnson, Jennifer Lopez, Maria Elena Riddle, Hermelinda Sapien and Rachel Wickland (collectively, "individual defendants") submitted false certifications to the federal and the state government in connection with Title IV of the Higher Education Act (HEA), 20 U.S.C. §§ 1070 *et seq.,* in violation of the False Claims Act (FCA), 31 U.S.C. §§ 3729–3737, and its California counterpart, the California False Claims Act (CFCA), California Government Code section 12652(c).  *See*

1

*generally* FAC. Relators also allege common law claims of payment under mistake of fact and unjust enrichment, and fraud and deceit based on California Civil Code sections 1709 and 1710. *Id.* On October 15, 2015, the State of California and the United States declined to intervene in the action. ECF No. 24.

This matter is before the court on defendants' motion to dismiss the First Amended Complaint. *See generally* Mot., ECF No. 43-1. Relators oppose, Opp'n, ECF No. 51, and defendants have replied, ECF No. 53. The United States, though having declined to intervene, submits a Statement of Interest with respect to the issue of "express" and "implied false certification" theories of FCA liability, ECF No. 52, and defendants have responded to the statement, ECF No. 54. The court held a hearing on April 22, 2016. Gary Callahan appeared for relators. Elizabeth O'Brien and Larry Gondelman appeared for defendants. Vincente Tennerelli appeared for the United States.

For reasons explained below, the court GRANTS in part and DENIES in part defendants' motion to dismiss.

I. REQUEST FOR JUDICIAL NOTICE

Defendants request the court take judicial notice of the following:

CET's Program Participation Agreement (PPA).

CET's Institutional Participation Agreement (IPA).

Final Program Review Determinations (FPRD) Program Review control Numbers 201320828221 and 201310828169, published by the Department of Education (DOE) at https://studentaid.ed.gov/sa/about/data-center/school/program-reviews.

Req. Jud. Not. (RJN), ECF No. 43-4, Exs. A–C. Relators do not oppose the request for judicial notice. Under Federal Rule of Evidence 201(b), "the court may judicially notice a fact that is not subject to reasonable dispute because it (1) is generally known within the trial court's territorial jurisdiction; or (2) can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." *United States v. Esquivel*, 88 F.3d 722, 726–27 (9th Cir. 1996).

1    The court takes judicial notice of the FPRD because the content of government
2 agency websites is a proper subject of judicial notice.  *Paralyzed Veterans of Am. v. McPherson*,
3 No. 06-4670, 2008 WL 4183981, at *5 (N.D. Cal. Sept. 9, 2008).
4    Upon further reflection since hearing, the court need not take judicial notice of the
5 PPA, IPA, or OMB Circular No. A-133 forms, because the First Amended Complaint refers to the
6 documents and they are central to relators' claims.  Courts may consider material properly
7 submitted as part of the complaint; even if not physically attached to the complaint, documents
8 may nevertheless be considered if their authenticity is not contested and the plaintiff's complaint
9 necessarily relies on them.  *Lee v. City of L.A.*, 250 F.3d 668, 689–90 (9th Cir. 2001); *see* FAC
10 ¶¶ 43, 44.  While the court cites below to the Request for Judicial Notice for the purposes of
11 identifying the documents filed with it, it does not take notice as requested.

## II.    STATUTORY BACKGROUND

   Under the FCA, a private individual can bring an action known as *qui tam* action
on behalf of the United States government against any individual or company who has knowingly
presented a false or fraudulent claim to the government.  *United States ex rel. Anderson v.
Northern Telecom*, 52 F.3d 810, 812–13 (9th Cir. 1995).  In this case, relators have raised
allegations that CET and other individual defendants made false certifications to the government
to obtain funding under Title IV of the HEA.

   Under Title IV of the HEA, Congress established various student loan and grant
programs in order to assist eligible students in obtaining a post-secondary education.  FAC ¶ 33.
In order for an educational institution to receive federal subsidies under Title IV and the HEA, or
to have its students receive such funding, it must enter into a PPA with the DOE.  20 U.S.C.
§ 1094(a); 34 C.F.R. § 668.14.  Each PPA expressly conditions a school's initial and continuing
eligibility to receive Title IV funding on compliance with certain statutory and regulatory
provisions.  20 U.S.C. § 1094(a); *United States ex rel. Hendow v. Univ. of Phoenix*, 461 F.3d
1166, 1168–69 (9th Cir. 2006).  By entering into a PPA with the DOE, the educational institution
agrees and certifies that "it will comply with all statutory provisions of or applicable to Title IV of
the HEA, all applicable regulatory provisions prescribed under that statutory authority . . . ."

3

34 C.F.R. § 668.14(b)(1). The relevant statutes here are those governing (1) the most recent available data concerning employment statistics and graduation statistics, 34 C.F.R. § 668.14(b)(10)(i); (2) tuition and fees, *id.* § 668.1(b)(1)(iii); (3) placement rates of graduates, *id.* § 668(b)(1)(iv); (4) occupations that the program prepares students to enter, *id.* § 668(b)(1)(v); (5) median loan debt incurred by student who completed the program, *id.*; (6) financial assistance available, *id.* § 668.41(d)(1); and (7) the placement of and types of employment obtained by graduates, *id.* § 668.41(d)(5).

HEA also prohibits educational institutions from engaging in misleading or deceptive marketing. *Id.* § 668.71(b)–(c). Provisions following section 668 expressly provide that the educational institution and its representatives may not make "[a]ny false, erroneous or misleading statement" to any student, prospective student or the public regarding information, including (1) the nature of the institution's educational program, *id.* § 668.72, (2) the financial charges, *id.* § 668.73, and (3) the employability of graduates, *id.* § 668.74.

On a parallel track with the federal system, California provides students with financial aid through the Cal Grants Program. Cal. Educ. Code §§ 69400–69460. In order to participate in the Cal Grants Program, educational institutions must sign and certify an IPA. FAC ¶ 43. The IPA contains certain requirements that parallel those imposed by the HEA. *Id.* ¶ 64. For example, participating educational institutions are prohibited from,

> b. Promis[ing] or guarantee[ing] employment, or otherwise overstating the availability of jobs upon graduation;
>
> . . .
>
> (j)(2) . . . mak[ing] an untrue or misleading change in, or untrue or misleading statement related to, a test score, grade or record of grade, attendance record, record indicating student completion, placement, employment, salaries or financial information, including . . . [i]nformation or records relating to the student's eligibility for student financial aid at the institution; and
>
> . . .
>
> (m) Direct[ing] any individual to perform an act that violates this chapter . . . .

Cal. Educ. Code § 94897(b), (j)(2), (m).

4

III.     FACTUAL ALLEGATIONS

Relators, four former students at CET, a non-profit educational institution, allege that CET and individual defendants (1) did not disclose to prospective and current CET students employment and/or placement rates of CET Sacramento's Medical Assistant (MA) graduates, and (2) falsely certified compliance by misrepresenting the nature of CET's Sacramento MA program. FAC ¶¶ 10–13, 61–62, 67.

Relators allege that defendants included false certifications in CET's PPA submitted to the DOE in 2009.  FAC ¶¶ 45, 50–51.  As discussed in more detail below, defendants claimed CET would comply with the following Gainful Employment (GE) Disclosure Requirements, but did not accurately disclose as required:

> (1) the most recent available data concerning employment statistics and graduation statistics, 34 C.F.R. § 668.14(b)(10)(i);
>
> (2) tuition and fees, 34 C.F.R. § 668.6(b)(1)(iii);
>
> (3) placement rates of graduates, 34 C.F.R. § 668.6(b)(1)(iv);
>
> (4) occupations that the program prepares students to enter, 34 C.F.R. § 668.6(b)(1)(i);
>
> (5) median loan debt incurred by students who completed the program, 34 C.F.R. § 668.6(b)(1)(v);
>
> (6) financial assistance available, 34 C.F.R. § 668.41(d)(1); and
>
> (7) . . . placement of and types of employment obtained by graduates, 34 C.F.R. § 668.41(d)(5).

FAC ¶¶ 50–51.

Specifically, CET Sacramento's admission and recruitment representative had represented to relators Handal and Stearns that CET offered lifetime job placement assistance, and CET can usually place its graduates in their field of study.  *Id.* ¶ 108.  However, CET not only did not offer job placement assistance to relators, but also did not offer the MA externships, which relators needed to complete their MA program.  *Id.* ¶ 109.  Lastly, though defendant Johnson assured relators that the tuition for CET Sacramento's MA program covered the cost of books and supplies, *id.* ¶ 111, relators had to buy their own scrubs and textbooks, *id.* ¶ 113. Relators also allege Johnson misinformed relators Dominguez and Fernandez, who received

5

welfare payments, that they were not required to inform welfare authorities of the loans they received to cover the cost of attending CET Sacramento's MA program. *Id.* ¶ 115.

IV.     LEGAL STANDARD

A complaint must meet the standard set forth in Rule 8 and include a short and plain statement of each claim showing that the pleader is entitled to relief. Fed. R. Civ. P. 8(a)(2). "Under the pleading requirements of Federal Rule of Civil Procedure 8, [a court] must determine whether the complaint contains 'sufficient factual matter' that, taken as true, 'states a claim for relief [that] is plausible on its face.'" *United States ex rel. Lee v. Corinthian Colleges*, 655 F.3d 984, 991 (9th Cir. 2011) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 677 (2009)).

Under Rule 12(b)(6), a party may move to dismiss based on the failure to state a claim upon which relief may be granted. Fed. R. Civ. P. 12(b)(6). A motion to dismiss based on Rule 12(b)(6) challenges the legal sufficiency of the claims alleged. *See Parks Sch. of Bus. Symington*, 51 F.3d 1480, 1484 (9th Cir. 1995). In considering such a motion, a court must take all allegations of material fact as true and construe them in the light most favorable to the nonmoving party. *Cousins v. Lockyer*, 568 F.3d 1063, 1067 (9th Cir. 2009). "[C]onclusory allegations of law and unwarranted inferences are insufficient to avoid a Rule 12(b)(6) dismissal." *Id.*

Additionally, when alleging fraud or mistake, a relator is held to a heightened pleading standard, and is required to "state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b). *Qui tam* actions under the FCA and CFCA must meet not only the requirements of Rule 8, but also the particularity requirements of Rule 9. *Corinthian Colleges*, 655 F.3d at 992; *see also Mendiondo v. Centinela Hosp. Medical Ctr.*, 521 F.3d 1097, 1100 (9th Cir. 2008). Notably, Rule 9(b) requires only that the circumstances of the alleged fraud be stated with particularity; other facts may be pled generally, or in accordance with Rule 8. *Id.* The Ninth Circuit has joined the Fifth Circuit in concluding, that it is sufficient to allege "particular details of a scheme to submit false claims paired with reliable indicia that lead to a strong inference that claims were actually submitted." *Ebeid ex rel. United States v. Lungwitz* (*Ebeid*), 616 F.3d 993, 998–99 (9th Cir. 2010).

6

V. DISCUSSION

As noted above, the First Amended Complaint includes both Federal and California False Claims Act claims, common law claims of payment under mistake of fact and unjust enrichment, and fraud and deceit based on California Civil Code sections 1709 and 1710. The CFCA was patterned after, and closely resembles the FCA. *United States v. Johnson Controls, Inc.*, 457 F.3d 1009, 1020 (9th Cir. 2006); *Rothschild v. Tyco Int'l, Inc.*, 83 Cal. App. 4th 488, 494 (2000). Specifically, under the FCA, relators allege defendants knowingly presented or caused to be presented, a false or fraudulent claim for payment or approval, 31 U.S.C. § 3729(a)(1)(A), and knowingly made, used, or caused to be made or used, a false record or statement material to a false or fraudulent claim, *id.* § 3729(a)(1)(B). Relators also allege parallel claims under the CFCA: defendants knowingly presented or caused to be presented a false or fraudulent claim for payment or approval, Cal. Gov. Code § 12651(a)(1), and knowingly made, used, or caused to be made or used a false record or statement material to a false or fraudulent claim, *id.* § 12651(a)(2). In light of the similarity between the state and federal provisions, federal decisions are persuasive authority in resolving CFCA claims. *See Richards v. CH2M Hill Inc.*, 26 Cal. 4th 798, 812 (2001); *see also City of Pomona v. Superior Court*, 89 Cal. App. 4th 793, 802 (2001) ("Given the lack of California authority and the very close similarity of [the CFCA] to [the FCA], it is appropriate to turn to federal cases for guidance in interpreting the act."). The court therefore considers the California False Claims Act claim together with the Federal False Claims Act claim.

A. False Claims Act: Express or Implied False Certification

The Ninth Circuit has recognized that false certifications may violate the FCA. *U.S. ex rel. Hopper v. Anton*, 91 F.3d 1261, 1266–67 (9th Cir. 1996). False certification may be express or implied. *See Universal Health Servs., Inc. v. United States*, ___ U.S. ___, 136 S. Ct. 1989, 2000–01 (June 16, 2016); *United States ex rel. Capriola v. Brightstar Educ. Group, Inc.*, No. 11-00135, 2013 WL 1499319, at *4 (E.D. Cal. Apr. 11, 2013). An express false certification occurs when an entity seeking payment affirmatively certifies compliance with a law, rule or regulation as part of the process through which the claim for payment is submitted. *Ebeid*, 616

7

F.3d at 998. In contrast, implied false certification occurs when an entity has previously expressly certified compliance with a law, rule, or regulation and that obligation is again implicated through submission of a claim for payment, even though a renewed certification of compliance is not required. *Id.* The submission of a claim for payment following initial approval of a grant funding agreement is an implicit reaffirmation of compliance. To establish implied false certification, a plaintiff must show that (1) "the claim does not merely request payment, but also makes specific representations about the goods or services provided;" and (2) "the defendant's failure to disclose noncompliance with material statutory, regulatory, or contractual requirements makes those representations misleading half-truths." *Universal Health Servs.*, 2016 WL 3317565, at *9. In either situation, express or implied, the false certification of compliance creates liability when that certification is a prerequisite to the government benefit. *Id.* (citing *Anton*, 91 F.3d at 1266).

Also as noted above, as a precondition to receiving any Title IV funds, an institution must enter into a PPA with the DOE. 20 U.S.C. § 1094(a); 34 C.F.R. § 668.14(a)(1). The PPA "conditions the initial and continued participation of an eligible institution in any Title IV, HEA program upon compliance with the provisions of this part, the individual program regulations, and any additional conditions specified in the program participation agreement . . . ." 34 C.F.R. § 668.14(a)(1). In entering the PPA, an institution certifies that it will comply with the PPA and relevant regulations as part of participating in Title IV grant funding programs.

Here, relators allege that defendants falsely represented their compliance with Title IV of the HEA's disclosure requirements and its prohibition of misrepresentations by recruitment, financial aid and management staff. FAC ¶ 3. Specifically, relators allege institutions participating in Title IV programs that advertise job placement rates must provide recent employment and graduation statistics to a prospective student at or before that student's enrollment. *Id.* ¶ 51 (citing 34 C.F.R. § 668.14(b)(10)(i)). Relators further allege institutions eligible for Title IV funds are prohibited from substantial misrepresentation of their programs. *Id.* ¶ 63 (citing 34 C.F.R. § 668.71(b)–(c)). Based on express certifications of compliance with these requirements, CET receives Title IV funds. *Id.* The applicable regulations conditioned CET's

1  participation in the Title IV program on the school entering into an agreement with the DOE, in
2  which the school agreed to provide certain information and not to misrepresent its programs.  *Id.*;
3  *see also* RJN at 5–6.  As in an analogous case recently before the Ninth Circuit, "it is beyond
4  dispute that the [educational institution] signed the written Program Participation Agreement, thus
5  making an express statement of compliance."  *Hendow*, 461 F.3d at 1168; *United States ex Rel.*
6  *Campie v. Gilead Sciences, Inc.*, No. 11-0941, 2015 WL 106255, at *9 (N.D. Cal. Jan. 7, 2015).
7  Relators' claims are based on CET's express false certifications.

        B.        <u>Pleading Standard Under the FCA</u>

9          The essential elements of an express false certification claim are "(1) a false
10  statement or fraudulent course of conduct, (2) made with scienter, (3) that was material,
11  (4) [submitted in a claim to] the government to pay out money or forfeit moneys due."  *Hendow*,
12  461 F.3d at 1174.

        1.        <u>False Statement or Fraudulent Conduct</u>

14          Relators must first plausibly allege that CET and the individual defendants made a
15  false statement or engaged in fraudulent conduct.  Relators allege the written materials provided
16  to CET's students, including CET's California Fall 2010 catalog, CET Sacramento's Catalog
17  addenda 2011–2012, the CET MA pamphlet, a performance fact sheet for 2009–2010, and CET
18  California's enrollment agreement, do not provide the information required by the HEA.  FAC
19  ¶¶ 52–56.  Relators also allege defendants misrepresented placement and employment data.

        a)        <u>CET</u>

21          Regarding the claim against CET, relators allege that CET's catalog for Fall 2010
22  did not provide information on tuition costs, occupations the MA program seeks to prepare
23  students to enter, the type of employment MA students could expect to obtain upon graduation,
24  MA graduate placement rates, or median loan debt upon graduation, all as required by 34 C.F.R.
25  §§ 668.6(b)(1) and 668.41(d)(5).  *Id.* ¶¶ 52–56.  Relators also allege that Johnson, CET
26  Sacramento's admission and recruitment representative, provided students with false placement
27  data and employability information on behalf of CET.  *Id.* ¶¶ 57–62, 75–81, 106–09.  Relators
28  further allege that Johnson, on behalf of CET, misrepresented information on tuition costs and

financial aid.  Relators have alleged false statements or a fraudulent course of conduct with respect to defendant CET.

### b) Individual Defendants

With respect to individual defendants, relators allege Johnson told them that CET Sacramento's MA program had an overall placement rate between 70 and 80 percent, and that Handal and Stearns could expect a higher placement rate of 90 percent based on their age and maturity.  FAC ¶¶ 21, 57, 75.  Johnson showed relators the employment record of a former CET Sacramento MA graduate, but did not provide a copy of the document.  *Id.* ¶¶ 58, 76.  Relators also allege Cruickshank, the director of CET Sacramento's center between June 2011 and April 2012, asked CET Sacramento MA students to sign a document indicating a 40 percent placement rate.  *Id.* ¶¶ 17, 59.

Relators contend that it was Johnson who told relators that CET offered lifetime job placement assistance, and CET usually was able to place its graduates in their field of study.  *Id.* ¶ 108.  However, CET not only did not offer job placement assistance to relators, but also did not offer the MA externships, which relators needed to complete their MA program.  *Id.* ¶ 109.  Johnson informed relators their tuition covered the cost of books and supplies.  *Id.* ¶ 111.  However, relators had to buy their own scrubs and textbooks.  *Id.* ¶ 113.  Johnson misinformed relators Dominguez and Fernandez they were not required to inform welfare authorities of the loans they received to cover the cost of attending CET Sacramento's MA program, when in fact they were.  *Id.* ¶ 115.

With respect to CET and defendants Johnson and Cruickshank, relators have alleged specific instances of violations in which defendants misrepresented or did not provide the required placement and employment data, and other misrepresentations with respect to the MA program.  With respect to the other individual defendants, relators have not stated with sufficient particularity any false statements or fraudulent conduct.  Rather, they make only conclusory allegations, such as (1) that Guajardo oversaw the daily operations of CET's educational training programs and delegated responding to Handal's concern to Riddle and/or Guzman, FAC ¶ 103; *see also* FAC, Ex. 14, and (2) that Wickland collaborated with community and government

1    agencies to ensure performance standards and accreditation requirements were met, and contracts
2    complied with, *id.* ¶ 25.  These are insufficient to state a claim under Rule 9(b).  *See Corinthian*
3    *Colls.*, 655 F.3d at 998 (Rule 9(b) requires more than generalized allegations of monitoring and
4    approving violations).

    In sum, relators properly allege a false statement or fraudulent course of conduct against CET and defendants Johnson and Cruickshank only.

###    2.    Scienter

The second element of a false certification claim requires that the false statement be made with a defendant's scienter.  A plaintiff must allege the defendant made statements that were "intentional, palpable lie[s], made with knowledge of the falsity," or that the defendant was deliberately indifferent to or acted with reckless disregard of the truth of the statements.  *Hendow*, 461 F.3d at 1174 (internal citations omitted); *see also San Francisco Unified Sch. District ex rel. Contreras v. First Student, Inc.*, 224 Cal. App. 4th 627, 646 & n.9 (2014) (The CFCA sets a similar reckless disregard standard).  Whether relators can provide sufficient evidence to carry the burden of proof with respect to scienter is not resolved at this stage of the case.  Under Rule 9(b), malice, intent, knowledge, and other conditions of a person's mind, including scienter can be alleged generally."  *Corinthian Colls.*, 655 F.3d at 996 (internal quotations omitted).

With respect to CET, Johnson and Cruickshank, taking all factual allegations together, relators have met the scienter requirement.  Specifically, the allegations that CET, Johnson and Cruickshank gave relators false employment, job placement, and job placement assistance information that were incompatible with the lower employment and placement rates later presented, and regarding the lack of job placement assistance upon graduation are sufficient.  *See, e.g.*, FAC ¶¶ 57–62, 75–81, 106–22.  With respect to the other defendants, conclusory statements that those defendants acted with "reckless disregard of the truth or falsity," *see, e.g.*, FAC ¶¶ 62, 75, 79, 80, are insufficient.

###    3.    Materiality

All defendants argue the issues raised by relators were not conditions of payment, and thus are not material.  These issues include employment rates, instructors' qualifications,

instruction content, the nature of the facilities and equipment, and misrepresentations of availability of placement assistance and financial aid. Mot. at 13. Defendants contend that because these factors were conditions of participation they cannot be the basis of a FCA complaint because they are subject to administrative remedies. *Id.* Defendants also argued at hearing that § 668.6, which provides reporting and disclosure requirements for programs that prepare students for gainful employment, does not apply to them because it took effect after defendants first signed the PPA. *See* 34 C.F.R. § 668.6.

Defendants' argument regarding conditions of participation and payment contradicts Ninth Circuit case law. Under *Hendow*, the distinction between a condition of participation and a condition of payment is one without a difference. *Hendow*, 461 F.3d at 1176. The Circuit has explained that "if . . . conditions of participation were not conditions of payment, there would be no conditions of payment at all—and thus, an educational institution could flout the law at will." *Id.* That other circuits may have adopted the rule defendants propose has no import here, as this court is bound by Ninth Circuit precedent. *See, e.g.*, *Rodriguez v. Our Lady of Lourdes Med. Ctr.*, 552 F.3d 297, 304 (3d Cir. 2008), *abrogated by United States ex rel. Eisenstein v. City of New York, New York*, 556 U.S. 928 (2009); *United States ex rel. Wilkins v. United Health Group, Inc.*, 659 F.3d 295, 309 (3d Cir. 2011); *United States ex rel. Conner v. Salina Reg'l Health Ctr., Inc.*, 543 F.3d 1211, 1220 (10th Cir. 2008); *see also United States v. Stevens-Henager College*, ___F. Supp. 3d ___, No. 15-119, 2016 WL 1261063, at *7–10 (C.D. Utah Mar. 30, 2016).

In assessing the materiality element, the court looks at whether "the statutory requirements are causally related to [the government's] decision to pay out moneys due." *Hendow*, 461 F.3d at 1175. As noted above, to become eligible for Title IV funding, CET as a postsecondary educational institution must enter into a PPA with the DOE. 20 U.S.C. § 1070; 34 C.F.R. § 668.14.

/////

/////

/////

12

a) <u>Regulatory Provisions (Section 668)</u>

The PPA conditions the initial and continuing eligibility of an institution:

> An institution may participate in any Title IV, HEA program . . . only if the institution enters into a written [PPA] with the Secretary [of the DOE], on a form approved by the Secretary. A [PPA] conditions the initial and continued participation of an eligible institution in any Title IV, HEA program upon compliance with the provisions of this part, the individual program regulations, and any additional conditions specified in the [PPA] that the Secretary requires the institution to meet.

34 C.F.R. § 668.14(a)(1); *see also* FAC ¶ 34.

By entering into a PPA, CET agreed,

> It will comply with all statutory provisions of or applicable to Title IV of the HEA, all applicable regulatory provisions prescribed under that statutory authority, and all applicable special arrangements, agreements, and limitations entered into under the authority of statutes applicable to Title IV of the HEA, including the requirement that the institution will use funds it receives under any Title IV, HEA program and any interest or other earnings thereon, solely for the purposes specified in and in accordance with that program . . . .

34 C.F.R. § 668.14(b)(1); *see also* FAC ¶ 35. Under "General Terms and Conditions," CET's PPA provides that CET "understands and agrees that it is subject to and will comply with the program statutes and implementing regulations . . . as set forth in . . . 34 CFR Part 668." RJN at 6.

Section 668.71 provides that an institution is prohibited from engaging in activities that constitute substantial misrepresentation, including misrepresentations of the nature of the institution's educational program, financial charges, and employability of graduates. 34 C.F.R. §§ 668.14, 668.41, 668.72, 668.73, 668.74. Specifically, § 668.72 defines misrepresentation to include "false, erroneous, or misleading statements" regarding the qualification of a student after completion of the course, *id.* § 668.72(c); the institution's size, location, facilities, or equipment, *id.* § 668.72(f); the availability, frequency, and appropriateness of its courses and programs to the employment objective, *id.* § 668.72(g); the nature, age, and availability of its training equipment, *id.* § 668.72(h); the qualification of its faculty, *id.* § 668.72(i); certain financial assistance

13

information as required by § 668.42, *id.* § 668.72(o); and certain institutional information as required by § 668.43, *id.*

Defendants' violations as alleged in the operative complaint contravene the requirements of § 668. The regulatory conditions are prerequisites of federal funding. *See Hendow*, 461 F.3d at 1176; *see also* RJN at 5 ("The execution of this Agreement [PPA] by the Institution [CET] and the Secretary is a prerequisite to the Institution's initial or continued participation in any Title IV, HEA Program."). If CET had not agreed to comply with these conditions, it would not have been paid. *See id.* The PPA is a formalized constraint on CET's conduct. *Id.* Certification is not a mere assertion by CET that it has not broken the law yet, but also that it promises not to break the law during the term of the PPA. *Id.* Here, as in *Hendow*, relators have alleged that defendants violated several regulations upon which payment of federal grant funds was expressly conditioned. The motion cannot be granted on this basis.

b)       Effective Rate of Applicable Regulation

At hearing, defendants argued that the GE Disclosure Regulation at 34 C.F.R. § 668.6(b) is not a condition of payment and should not be read together with § 668.41. Section 668.41 regulates the reporting and disclosure of information, including, the financial assistance available, completion or graduation rate, placement and types of employment obtained by graduates, and so on. Defendants argue that section 668.6 did not come into effect until July 1, 2011, after CET signed the PPA, RJN at 2.

The court finds this argument unpersuasive for two reasons. First, as noted above, CET's certification of compliance is a certification of a promise to not break the law during the term of the agreement. *Hendow*, 461 F.3d at 1176. Though CET signed the PPA in 2009 when the GE Disclosures regulation was not yet effective, CET's promise was to comply with "applicable statutes and regulations," without exception. Section 668.6 became part of the "applicable statutes and regulations" in July 1, 2011.

Second, defendants cite no relevant authority in support of their argument that an amendment to a regulatory framework expressly cited in a PPA is inapplicable to an institution that is a party to the PPA. Rather, the only fair reading is where participants certify to comply

14

with certain statutory and regulatory requirements, they must familiarize themselves such requirements. *Cf. Siebert v. Gene Security Network, Inc.*, 75 F. Supp. 3d 1108, 1118 (N.D. Cal. 2014) (citing *United States v. Mackby*, 261 F.3d 821, 828 (9th Cir. 2001)) ("Participants in the Medicare program have a duty to familiarize themselves with the legal requirements for payment.").

Accordingly, § 668.6 became applicable to defendants in 2011, and a violation of that section is material because it is part and parcel of the regulatory scheme defendants agreed to follow.

Relators have properly alleged CET, and individual defendants Johnson and Cruickshank, made statements or engaged in a course of conduct material to the United States' funding decision.

### 4. Government Payment of Funds

Finally, the FCA requires a plaintiff to allege a "false statement or course of conduct [which] causes the government to pay out money . . . ." *Hendow*, 461 F.3d at 1177. Here, relators allege CET has received funds from the federal Pell Grant, Federal Supplemental Educational Opportunity Grant, and Federal Work Study Programs. Relators allege CET certified its compliance with Title IV programs to receive these funds despite its misrepresentations and lack of required disclosures to students and prospective students. *Capriola*, 2013 WL 1499319, at *8; *see also* FAC ¶¶ 45–49. These allegations satisfy the fourth element of the FCA claim.

### 5. Conclusion

Relators have not sufficiently alleged that defendants, other than CET, Johnson and Cruickshank, made false statements or acted fraudulently to satisfy Rule 9(b). To the extent the First Amended Complaint does not plead a violation of the FCA based on a false certification theory against Aryanpour, Guajardo, Guzman, Lopez, Riddle, Sapien and Wickland, the court GRANTS defendants' motion to dismiss the FCA and CFCA claims but with leave to amend if amendment is possible. Fed. R. Civ. P. 11. Defendants' motion to dismiss the FCA and CFCA claims against defendants CET, Johnson and Cruickshank is DENIED.

C.  Common Law Claims

Relators concede the FCA does not give them standing to assert common law claims on behalf of the United States. Accordingly, the court GRANTS defendants' motion to dismiss these claims WITHOUT PREJUDICE, allowing for refiling should the United States intervene later in the case.

D.  State Law Fraud and Deceit Claim: California Civil Code Sections 1709 and 1710

Defendants also move to dismiss relators' fraud and deceit claim. Relators oppose the motion in this respect, but argue only that "[b]ecause the pleading requirements for [r]elators' fraud and deceit claims are the same as for the FCA claims," their arguments addressing the FCA claims apply to the state law claims as well. Opp'n at 21.

Under Civil Code section 1709, a person is liable for fraudulent deceit if he "deceives another with intent to induce him to alter his position to his injury or risk . . . ." Section 1710 of the Civil Code defines deceit for the purposes of section 1709 as, *inter alia*, "[a] promise, made without any intention of performing it." "'The elements of fraud, which give rise to the tort action for deceit, are (a) misrepresentation (false representation, concealment, or nondisclosure); (b) knowledge of falsity (or 'scienter'); (c) intent to defraud, i.e., to induce reliance; (d) justifiable reliance; and (e) resulting damage.' [Citations]." *Lazar v. Superior Court*, 12 Cal. 4th 631, 638 (1996). Each element must be alleged with particularity. *Conrad v. Bank of America*, 45 Cal. App. 4th 133, 156 (1996).

The first two prongs of the state fraud and deceit claim echo the first two FCA requirements discussed above. Relators' allegations, taken as true, also establish the remaining three prongs with respect to Johnson. Relators allege defendant Johnson intentionally provided false information on topics such as curriculum, employment rate and job placement, that did not correspond with the actual figures later provided. *See, e.g.*, FAC ¶¶ 180, 181. Relators allege Johnson made these misrepresentations in order to enroll prospective students. *See id.* ¶ 183. These allegations establish Johnson's intent to defraud at this stage of the case. Relators justifiably relied on these misrepresentation to enroll in CET's MA program, believing, among other things, the program would lead to employment after graduation. *See id.* ¶ 184. However,

1  rather than leading to employment, the program resulted in damages to relators. *Id.* ¶¶ 185–89.
2  Defendants' argument that the provision of the misleading information about the MA program's
3  curriculum, job placement and other related information is not actionable under the state law
4  claim is unpersuasive. Defendants cite to *Padgett v. Phariss*, 54 Cal. App. 4th 1270, 1284 (1997),
5  for this general argument; however, the California Court of Appeal in that case found opinions
6  provided by the real estate agent at issue were not misrepresentation because they were merely
7  opinions and not reporting factual data. *Padgett*, 54 Cal. App. 4th at 1284. The case before this
8  court is distinguishable, because Johnson did not provide a mere opinion. Rather, he provided
9  employment data and curriculum to the plaintiffs. Given relators have stated a claim against
10  Johnson, relators also have stated a claim against CET so far as it is based on Johnson's alleged
11  actions. *See Garton v. Title Ins. & Trust Co.*, 106 Cal. App. 3d 365, 375–76 (1980).

12  Relators, however, have not stated with specificity allegations with respect to
13  Cruickshank. They say only that Cruickshank, along with others, was privy to CET MA students'
14  graduation and performance records but either did not manage Johnson properly or encouraged
15  Johnson to mislead and misrepresent information. *Id.* ¶ 183. This allegation alone is insufficient
16  to state a fraud and deceit claim against Cruickshank. Accordingly, for reasons stated above,
17  defendants' motion to dismiss the state law claims against defendants CET and Johnson is
18  DENIED. Defendants' motion to dismiss the state law claim against Cruickshank is GRANTED.
19  Because relators have not stated a claim under the FCA against the remaining defendants,
20  relators' state law claims against them are DISMISSED but with leave to amend.

21  VI.  CONCLUSION
22  Defendants' motion to dismiss relators' common law claims is GRANTED without leave to
23  amend but without prejudice. Defendants' motion to dismiss relators' FCA and CFCA claims
24  against defendants CET, Johnson and Cruickshank is DENIED. Defendants' motion to dismiss
25  relators' state law fraud and deceit claim against CET and Johnson is also DENIED. The balance
26  /////
27  /////
28  /////

of defendants' motion to dismiss is GRANTED with leave to amend.  Relators are directed to file a Second Amended Complaint within twenty-one days of the date this order is filed.  This order resolves ECF No. 43.

        IT IS SO ORDERED.

DATED:  August 8, 2016.

_____
UNITED STATES DISTRICT JUDGE